**Ray Charles SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–0376–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 19, 1984.

Nancy B. LeLong, Huntsville, for appellant.

Frank Blazek, Huntsville, for appellee.

Before EVANS, C.J., and WARREN and BULLOCK, JJ.

## OPINION

EVANS, Chief Justice.

The appellant was tried and convicted by a jury of the offense of kidnapping. The jury determined that he had two prior felony convictions, and the court imposed the mandatory sentence of life imprisonment.

On the night in question, the complainant had been at a local bar with a male companion. On their way home, the complainant's car became stuck, and she and her companion started to walk to the apartment complex where they both lived. The man did not wish for his wife to know that he had been with the complainant, so he separated from the complainant several blocks from the apartment complex. The complainant then accepted a ride from two men in a car. Complainant testified that both men were strangers to her. She also testified that the men refused to drop her off at her home, and that they took her against her will, and under threat of serious bodily harm, to an isolated location, where they raped her. She said that she pretended to

enjoy the attack because she was afraid of "being found dead in the woods," and that she finally succeeded in persuading the driver to drop off his passenger and to return her to her apartment complex.

Upon reaching the apartment complex, the complainant pointed out, as her own apartment, the home of the neighbor with whom she had spent the evening, and invited the driver to meet her inside. She was able to reach the neighbor's apartment before the driver arrived at the door. She immediately started to cry and told the neighbor and his wife that she had been raped. The neighbor's wife testified that a few minutes later the appellant came to the door. She recognized the appellant as a person she had known for a long time. She asked the complainant "Is this the guy that raped you?" to which the complainant replied "Yeah, get him away from me." The witness's husband then forced the appellant to leave the premises.

The appellant's co-defendant waived his Fifth Amendment right and testified against appellant in exchange for a five year probated sentence for his part in the kidnapping. The co-defendant gave essentially the same account of the abduction. The appellant does not challenge the sufficiency of the evidence except with respect to the evidence identifying him as the driver of the kidnap vehicle. In his second ground of error, he asserts that the only evidence identifying him as the driver of the car came from the accomplice witness and that the other evidence connecting him to the offense is insufficient to corroborate that identification.

Tex.Crim.Proc.Code Ann. art. 38.14 provides that a defendant may not be convicted on accomplice testimony alone, and that there must be "other evidence tending to connect the defendant with the offense."

■ At trial, the complainant could not identify appellant as the driver. However, she testified that a photograph of the appellant, taken on the night of the offense, looked like the driver of the car. She said that the driver had worn a black or brown leather jacket, a light colored leather hat,

and a textured shirt, and she described him as having sideburns and coarse hair on his lips and chin. A photograph of the appellant taken on the night of the abduction shows a man fitting the description given by the complainant wearing a brown leather cap and jacket. Additionally, the complainant made a positive identification of appellant's car as the vehicle in which she was abducted. She testified that during the time she was being sexually assaulted by the driver, the passenger told the driver "Hurry up, Charlie," which is appellant's name. This testimony by complainant corroborates the identification by the accomplice witness. The neighbor's identification of the appellant as the man waiting outside the apartment and as the person that the complainant pointed out as her attacker is additional evidence connecting appellant to the offense. We overrule appellant's second ground of error. The appellant's remaining grounds of error pertain to alleged errors occurring during the course of trial.

■ In his third ground of error, the appellant contends that the trial court erred in refusing his motion for a mistrial after some prospective jurors apparently glimpsed him in handcuffs as he was entering the hallway. In support of this ground, the appellant cites *Moore v. State*, 535 S.W.2d 357 (Tex.Crim.App.1976). In that case, the defendant, while still handcuffed, was escorted into the courtroom in full view of the jury on four separate occasions, despite his attorney's objections. The accidental exposure of appellant during the voir dire process falls far short of the deliberate and prejudicial exposure of the defendant in *Moore*. The facts in this case are much closer to the circumstances related in *Coleman v. State*, 642 S.W.2d 205 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd), where a juror accidentally saw a defendant exiting an elevator in handcuffs. There, the court held that such exposure did not have "such prejudicial effect as to have deprived appellant of a fair trial."

In the instant case, the appellant did not show that any of the jurors finally selected to hear his case actually saw him in hand-

cuffs, and there is nothing in the record to indicate that such exposure was deliberate or so prejudicial as to have deprived him of a fair trial. We overrule the third ground of error.

■ In his fourth ground of error, the appellant contends that the trial court improperly commented on his defense counsel's strategy of approaching the bench to make all objections during the course of trial.

The record shows that toward the end of the State's case, appellant's counsel made a request to approach the bench. The State's attorney objected "to the continual parade to the bench," and the court overruled the State's objection. The appellant's counsel then invited the prosecutor to approach the bench, so that appellant's counsel could make his objection to the State's question. The prosecutor replied, "I'm comfortable," apparently declining to approach. The appellant's counsel then objected to the State's refusal, and the Court replied, "It isn't really necessary that you come up here." The appellant's counsel explained that he considered his approach to the bench as necessary to avoid prejudice before the jury, and the trial court acquiesced.

In a later incident, the following exchange between appellant's counsel and the State prosecutor occurred:

PROSECUTOR: Ray Charles is well known in the community, is he not?

DEFENSE: Your Honor, I object, may I approach the bench?

PROSECUTOR: Your Honor, I object to approaching the bench.

DEFENSE: I'm going to object once again. I had to object to this once before, the Prosecutor commenting on my approaching the bench to have the court reporter make my objections.

THE COURT: You may make your objection from your seat over there.

DEFENSE: Well, I object to the Court telling me that I don't have a right to come up here and to make my objections in front of the courtroom.

THE COURT: You may object for the rest of the day, but you may also go back to your place and make your objection.

DEFENSE: May I have a ruling, Your Honor?

THE COURT: That is overruled, sir. Proceed.

DEFENSE: Your Honor, let the record reflect that I'm standing back here at counsel table making my objection as directed by the Court.

THE COURT: That's correct, sir.

DEFENSE: And having to make my objection out loud instead of to the court reporter.

THE COURT: Do you want the jury retired?

DEFENSE: I would request that, yes, Your Honor.

THE COURT: Would you please go to your room, ladies and gentlemen.

(the jury was then excused from the courtroom with the following being heard outside their presence.)

DEFENSE: I object to the Prosecutor's original remark and inflection and tone the Prosecutor used about Ray Charles Smith's being well known in the community.

THE COURT: The objection is overruled, sir.

DEFENSE: And I object to him objecting once again in the presence of the jury to my approaching the bench as I have been doing the whole trial and requesting to approach the bench and commenting on that.

THE COURT: The objection is—

DEFENSE: May I finish my objection, Your Honor?

THE COURT: I apologize.

DEFENSE: He is getting to the Defendant through the Defendant's counsel and that attitude (inaudible) the Defendant right here in court through Defendant's counsel, and the Court—I object to the Court doing the same thing.

THE COURT: The objection is overruled, sir. Are you ready for the jury?

DEFENSE: Yes, Your Honor.

THE COURT: Please bring them in. (The jury was then summoned into the courtroom.)

THE COURT: Thank you for your patience, ladies and gentlemen. All right, proceed sir.

PROSECUTOR: Mr. Archie, you were asked the question if Ray Charles was well known. You may answer that question.

A. Yes, I would say from the community that he lives in, a small community, one would be well known.

Our review of the record indicates that the trial court's rulings and comments were made solely in an effort to assure orderly trial procedure, and were not directed toward any substantive issues in the case. There is no indication that the appellant was in any manner prejudiced by the procedural arguments occurring between his counsel and the prosecutor, or by the Court's actions thereon. The fourth ground of error is overruled.

Finally, the appellant contends that he is entitled to a new trial because the jury received other evidence during its deliberations. At the hearing on appellant's motion for new trial, the foreman of the jury gave the following testimony:

Q. During the deliberations as to whether or not Ray Charles Smith was guilty or innocent, did any of the jurors relate a personal experience concerning another rape victim from an unrelated incident?

A. Yes, sir.

Q. What did the juror say?

A. Let me set the stage for you. At the time we were discussing the issue where the victim was unable to identify the defendant in the courtroom setting, and there was some discussion among the jurors on that issue.

To make a point, this particular juror mentioned that he was familiar with another rape case whereby the rape victim had spent several hours with the defendant—or the individual that had raped her in that case; and she was unable, in that case, to identify the individual that had raped her.

And he was using this to make a point that possibly the victim in this case was suffering from similar circumstances.

The implication being that the trauma was such that she was unable to identify—she may have been unable to identify the defendant in the courtroom.

Q. Was this mentioned more than once?

A. I believe it was. It may have been mentioned more than once.

The juror further testified that the other juror's statement was made "as an illustration" and in the context of a general discussion regarding "the overall identification issue, not specifically about this case that he brought up as an example." He said he considered the statement a casual remark and that it did not affect his deliberations with respect to appellant's guilt or innocence.

■ Tex.Crim.Proc.Code Ann. art. 40.-03(7) requires that a new trial be granted "where the jury, after having retired to deliberate upon a case, has received other evidence." Thus, if the jury improperly considers new "evidence" that is detrimental to the defendant, a new trial must be granted, regardless of any showing of injury to the appellant. *Garza v. State*, 630 S.W.2d 272, 274 (Tex.Crim.App.1981). In determining whether a new trial is required, the reviewing court must decide "the character of the evidence" considered by the jury. *Garza, supra.*

■ We conclude that the juror's statement, that the victim in an unrelated rape case was unable to identify her assailant, did not constitute "other evidence" within the meaning of Article 40.03(7). The record clearly shows that the juror merely related the experience of another to serve as an illustration, explaining his viewpoint with respect to complainant's failure to make a positive, in-court identification. As discussed below, the identity of the appellant or the driver of the kidnap car was not a disputed issue at the trial of the case.

The appellant cites, among other cases, *Rogers v. State*, 551 S.W.2d 369 (Tex.Crim. App.1977), in support of his argument that a new trial is required. In *Rogers*, the jury foreman stated during deliberations that he had been the victim of a robbery and could identify his assailant within three years of the offense. He had further stated "you never forget a face in a robbery." The court held that this constituted "other testimony" within the meaning of art. 40.03(7) and that because such testimony was adverse to the defendant's case, the statute required a reversal without consideration of the probable effect on the jury or any question of injury. 551 S.W.2d 370.

We note that the legislature amended art. 40.03(7) effective January 1, 1974, and that the amended statute substitutes the word "other *evidence*" for the term "other *testimony*", so that different language was before the court in *Rogers*. However, we need not consider whether this distinguishing factor controls the disposition of the instant case, because we have concluded that the juror's statement in the instant case was not that character of "new evidence" which requires the granting of a new trial under art. 40.03(7).

In the case at bar, the issues at trial did not involve the question of appellant's identity as the driver of the car, and the appellant never disputed that identification. His identification was established by the complainant's own testimony, and by that of her neighbor, all of which clearly corroborated the testimony of his co-defendant who identified him as the driver of the automobile. The appellant's counsel never raised the issue of identification, either during the receipt of evidence or during closing argument, and instead sought only to prove that the complainant had consented to drive with the appellant and his co-defendant into the woods. Indeed, defense counsel called witnesses to prove a prior relationship between appellant and the complainant in an effort to impeach complainant's testimony that she had never seen appellant prior to the night in question. Thus, the facts of the instant case are distinguishable from those in *Rogers*, where the defendant's identification was a central issue in the case.

■ Article 40.03(7) requires a reversal where the jury considers new evidence that adversely affects the accused. *Stephenson v. State*, 571 S.W.2d 174 (Tex.Crim. App.1978). Thus, the "new evidence" must be examined to determine if it did have an adverse effect upon the defendant's case. Unless the character of the evidence was detrimental to the defendant, a new trial is not required even though the jurors may have discussed something that was not supported by the evidence. *Stephenson v. State, supra; Zuniga v. State*, 635 S.W.2d 780 (Tex.App.—Corpus Christi 1982, pet. ref'd). Since the issue of appellant's identification as the driver of the kidnap vehicle was not a disputed issue at trial, the juror's statement was not detrimental to the appellant and did not constitute "other evidence," requiring a new trial under art. 40.03(7). We overrule the appellant's fifth ground of error.

The judgment of the trial court is affirmed.